## CHESTER COUNTY v. HEMPHILL.

1. A cause of action stated and defined.
2. For failure on the part of the Clerk of Court to enrol and index judgments and decrees in the Courts of General Sessions and Common Pleas, for which services he charged and received the usual fees, the county may maintain an action on his official bond and recover judgment for the penalty, the damages sustained to be thereafter assessed. The county would certainly be entitled to recover the fees paid by it in criminal cases for services not rendered.
3. An allegation that defendant had failed to enrol and index 386 criminal cases for which he had been paid, and the plaintiff had suffered great loss thereby, was a sufficient allegation that plaintiff had paid this money—especially as further proof of actual damage is necessary under the judgment to be entered for the penalty.

Before WALLACE, J., Chester, October, 1887.

The opinion fully states the case.

*Mr. A. G. Brice*, for appellant.

*Messrs. Henry & Gage*, contra.

November 27, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This case comes before us on appeal of defendant from a decree of the Circuit Judge, his honor, Judge Wallace, overruling a demurrer interposed by the defendant, on the ground that the complaint did not state facts sufficient to constitute a cause of action.

Such being the character of the case, for a proper understanding of this opinion, it is necessary to set out the complaint in full. It is as follows:

"The above plaintiff shows to the court: I. (*a*) That on the 16th day of October, A. D. 1872, Charles C. Macoy was elected Clerk of the Court of General Sessions and Common Pleas Court for Chester County. (*b*) On the 20th day of November of the same year he executed and delivered to the State of South Carolina his official bond as such clerk in the penal sum of ten thousand dollars, conditioned as follows: 'Now, the condition of

the above obligation is such, that if the above bound Charles C. Macoy shall well and truly perform the duties of said office as now or hereafter required by law, during the whole period he may continue in said office, the above obligation to be void and of non-effect, or else to remain in full force and virtue.' (*c*) That he was qualified and duly commissioned by the State of South Carolina and entered upon the duties of and continued in said office for the four years ensuing.

"II. (*a*) That on the 7th October, A. D. 1876, the said Macoy was again elected to the same office. (*b*) On the 18th December following he executed and delivered to the State of South Carolina his official bond in the penal sum of ten thousand dollars, conditioned as follows: 'Now, the condition of the above obligation is such, that if the above bound C. C. Macoy shall well and truly perform the duties of said office as now or hereafter required by law during the whole period he may continue in said office, then the above obligation to be void and of non-effect, or else to remain in full force and virtue.' (*c*) That he thereafter was qualified and duly commissioned by the State of South Carolina and entered upon the duties of and continued in said office for the four years ensuing.

"III. (*a*) That during his two said terms of office as such clerk, the said Macoy wilfully failed and neglected to perform the duties of said office as prescribed by statutes. (*b*) That the conditions of said bonds have been broken by the default, failure, and neglect of the said Macoy in not recording in the pleadings and judgment five hundred and seventy-seven law cases. (*c*) That he was entitled under the fee bill of force during his two said terms for performing said duty $1,230.45, and collected the same. (*d*) That he further failed to do his duty as such clerk in not enrolling, indexing, entering on abstract of judgments and recording in pleadings and judgment two hundred and seventy-four equity cases, for which he received as compensation $401.25 under the fee bill of force at the time. (*f*) Further, that he neglected to enroll and index three hundred and eighty-six criminal cases, for which he received under the fee bill then of force $386. (*g*) That defendant was guilty of many other acts of gross neglect as such clerk by losing and misplacing records.

"IV. That the plaintiff has suffered great loss by the default and negligence of the defendant while being clerk as aforesaid, and that the plaintiff incurred great expense in repairing the injury to the records of said office caused by the defendant's neglect and default.

"V. That Charles C. McCoy died testate and James Hemphill, Esq., was, and is now, his duly qualified executor.

"Wherefore the plaintiff demands judgment against the defendant for the sum of twenty thousand ($20,000) dollars, amount of said bonds, and for the costs of this action.

"HENRY & GAGE,<br>
"<em>Plaintiff's Attorneys.</em>"

The defendant answered and plead several defences ; but upon the reading of the complaint the defendant interposed the oral demurrer that the complaint did not state facts sufficient to constitute a cause of action. After full argument, Judge Wallace made the following decree:

"The complaint in this action was filed by the County Commissioners of Chester County, and alleges that Charles C. Macoy was Clerk of the Court of Common Pleas and General Sessions for Chester County for two terms of that office, and that he at the beginning of each term executed a bond as required by law for the faithful performance of his official duties, as prescribed by law. The complaint further alleges that Macoy wilfully neglected to record five hundred and seventy-seven law cases as required by law, and received twelve hundred and thirty 45-100 dollars, the fees for recording the same. That he neglected to record and to enroll and index two hundred and seventy-four equity cases, and was paid considerable sums of money for fees which he had not earned. That he neglected to enroll and index three hundred and eighty-six criminal cases, and received from the county sums of money to which he would be entitled only when he had so enrolled and indexed these cases—and demands judgment on the bonds of the said clerk for the injury sustained by reason of his failure to perform his official duties. Macoy is dead, and the action is brought against James Hemphill, his executor.

"The defendant demurs to the complaint upon the grounds, substantially, that the plaintiff has no right of action. By the demurrer defendant admits the failure of Macoy to record the papers which he was by law required to record, and that he has received the compensation to which he would have been entitled by law if he had done the work. To record the pleadings and judgments, enroll and index decrees, and to enroll and index criminal cases, were duties imposed by law upon the clerk; a wilful neglect to perform these duties was an obvious breach of the bond and a right of action, therefore, lies somewhere. *Treasurer* v. *DeSaussure*, 2 Speer, 186. In the case of *Treasurers* v. *Ross* (4 McCord, 273), the court held, under the law as it then stood, this right of action belonged exclusively to individuals who had been injured by the default of the clerk. At that time the act of 1789 was of force, and required the clerk of the court to give bond for the faithful discharge of his duty and declares that such clerk shall be liable to all damage sustained by any person in consequence of the malpractice of such clerk. 7 *Stat.*, 254.

"In the case of *Treasurer* v. *DeSaussure, supra*, the then court take a somewhat broader view of the responsibility of the clerk and hold that the ordinary having failed to record certain papers which he was required by law to record, the commissioners of public buildings were required by law to have such recording, thus omitted by the ordinary, done and could maintain an action against the ordinary for the cost of the work—there is a very strong intimation in the opinion of the court, delivered by that eminent and venerable judge, Judge Evans, that the public held an enforceable interest in the recording of papers by public officers, as required by law, and the whole case leaves the impression that upon a proper case the stringent rule laid down in *Treasurer* v. *Ross, supra*, would have been relaxed.

"There has been a change in the political organization of the State since both of the cases above referred to were decided. We now have counties that are *quasi* corporations; they can sue and be sued. They appoint county officers, and among them clerks of the Courts of General Sessions and Common Pleas; these

latter are charged by law with the duty of making certain public records, and when they are made they are the property of the counties for which they are made. They are most important and valuable public property, essential to the peace, quiet, and security of the private rights of citizens, and the criminal records affect the great political right to vote of many citizens. The law imposes upon the clerk the duty to make these records, and he executes a bond conditioned upon the faithful discharge of his duties, and the county commissioners have power and authority over the 'local concerns of the respective counties.' Under these circumstances, to hold that the county commissioners have no right of action on the bond after condition broken, is to take too narrow a view of the rights of the public as such, and as represented by the county commissioners. It may be added that for such sums as were paid to Macoy by the county commissioners for services not rendered, the right of action is clear.

"It is therefore ordered, that the demurrer be overruled."

The defendant then served the following notice of appeal and exceptions: "Please take notice that the defendant appeals to the Supreme Court from the decree of Judge W. H. Wallace, filed herein on the 28th day of January, 1888, and will ask that said decree be reversed and the complaint herein dismissed, upon the following grounds and exceptions: 1st. Because his honor erred in finding that the complaint alleged that C. C. Macoy, as clerk, received from the county three hundred and eighty-six dollars for enrolling and indexing 386 criminal cases, although he had neglected to enroll and index said criminal cases. 2nd. Because his honor erred in holding that the county commissioners have a right of action upon the bond of Macoy, as clerk, for his failure to record the pleadings and judgments in civil and criminal cases as is required by law. 3rd. Because his honor overruled the demurrer and held that the allegations of the complaint stated facts sufficient to constitute a cause of action. 4th. Because his honor did not hold that the allegations of the complaint failed to show that the omissions of duty therein alleged against Macoy, as clerk, affected the interests and rights of the plaintiff; and because his honor did not hold that the allegations of the complaint stated no cause of action in favor of the plaintiff."

The appellant correctly states the nature of a cause of action, and what is necessary to be incorporated in a complaint to prevent it from being obnoxious to a demurrer like that interposed here. "A cause of action is a primary right possessed by the plaintiff with a corresponding duty upon the defendant, and a delict or wrong done by the defendant breaching this right and duty," and the complaint must state the facts showing the primary right, the duty, and the delict, at the peril to the plaintiff of going out of court for a failure thus to present his case. This is all plain enough, but the difficulty in all such cases is in the application of this principle. There is no room for doubt or discussion as to what is required in general terms to be set out in a complaint, but a difference of opinion may arise in a special case as to whether these legal requirements have been complied with, and it is the office of a demurrer to raise this question. It is admitted by the demurrer that the defendant failed to perform, as clerk for Chester County, the alleged duties stated in the complaint, but it is denied that the plaintiff had any right, primary or otherwise, to claim performance or that the failure of defendant to perform, was a delict or wrong done to plaintiff, whatever may be the rights of other parties in this respect.

We concur with the Circuit Judge in overruling the demurrer, and after reading carefully the decree, we do not know that we could add anything to what his honor has said as to the general rights of the counties in the public county records. But we think, in any event, the decree should be sustained upon so much thereof as refers to the failure to record the 386 criminal cases, for which the defendant received pay. It will be observed that the suit here is upon defendant's bond, and if the action is sustained, the plaintiff will be entitled to a judgment for the penalty. This judgment, however, will not authorize the plaintiff, without more, to enforce collection for any alleged damages; on the contrary, before this can be done, a step further must be taken. The plaintiff must establish the special damages claimed before execution can issue.

It is urged, however, that the plaintiff failed to state in the complaint that the amount received by the defendant for enrolling and indexing these criminal cases was paid by the county.

The allegation of the complaint as to this matter was as follows: "Further, that he neglected to enroll and index 386 criminal cases for which he received, under the fee bill then of force, three hundred and eighty-six dollars." This is followed by paragraph IV., in which it is stated, "that the plaintiff has suffered great loss by the default and negligence of defendant," &c., &c., referring no doubt to the negligence and defaults alleged in the paragraphs above, including that in reference to the criminal cases. And as the plaintiff could sustain no "*loss*" for a failure to record these criminal cases, except on account of having paid for such recording, we think, by a reasonable intendment, that this allegation should be construed as it was by his honor, and should be held sufficient, especially as the plaintiff, before it can enforce collection for any damages on this account, must, as we have said above, show in a future proceeding by direct and positive proof the amount paid by the county for said recording.

In his honor's decree a reference will be found to the only cases in our reports touching the question involved.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.